IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ROBERT MCKINNEY and EVANGELINE MCKINNEY, Plaintiff, vs. STATE FARM FIRE AND CASUALTY INSURANCE COMPANY, Defendants. | ) ) ) ) ) ) ) Civil Action No. 21-00414-KD-N ) ) ) ) ) ) |

**ORDER**

This matter is before the Court on the Motion for Summary Judgment filed by Defendant State Farm Fire and Casualty Company (Doc. 39), the Response by Plaintiffs Robert and Evangeline McKinney (Doc. 49), and Defendant's Reply (Doc. 52); Defendant's Motion to Exclude Expert Testimony (Doc. 41), Plaintiffs' Response (Doc. 50), and Defendant's Reply (Doc. 51).

**II.   Findings of Fact[1]**

Plaintiffs Robert and Evangeline McKinney (the "McKinneys") entered into an insurance contract (the "Policy") with Defendant State Farm Fire and Casualty Company ("State Farm") to insure the McKinneys' property at 15 Elizabeth Place, Mobile, AL (the "Property"). (Doc. 24-1 at 2). Hurricane Sally made landfall on September 16, 2020, and caused damage to the Property. The Policy, a homeowners policy, was in effect at the time of Hurricane Sally and the McKinneys filed a claim with State Farm. (Doc. 40 at 2). The McKinneys and State Farm

---

[1] The facts are taken in the light most favorable to the non-movant. Tipton v. Bergrohr GMBH–Siegen, 965 F.2d 994, 998–999 (11th Cir. 1992). The "facts, as accepted at the summary judgment stage of the proceedings, may not be the actual facts of the case." Priester v. City of Riviera Beach, 208 F.3d 919, 925 n. 3 (11th Cir. 2000).

1

disputed the scope and amount of damages the Property sustained as a result of Hurricane Sally. The McKinneys retained an expert, Dennis James, to prepare an estimate on the amount of damages.

## II. **Defendant's Motion to Exclude Expert Testimony of Dennis James**

State Farm moves to exclude the report and deposition testimony of Plaintiff's expert witness, Dennis James ("James"), as failing to satisfy the minimum Rule 702 and 703 admissibility standards under the Federal Rules of Evidence. As grounds, State Farm argues that: 1) James' opinion regarding the Hurricane Sally damage the Property incurred is not his own but instead the opinion of his estimator (Tracy Bush); 2) James was unsure as to the source of information regarding the age of various materials (floors, paint, and cabinets) in the Property; 3) James had limited knowledge of the Property's condition prior to Hurricane Sally; 4) James is relying on inadmissible hearsay; 5) James did not perform a causation analyses for the ceiling cracks; and 6) James did not rely on the kind of facts or data upon which an expert would reasonably rely. (Doc. 41).

In contrast, the McKinneys argue that: 1) James is qualified to give expert testimony; 2) James' methodology is reliable under Rule 702; 3) the estimate (the "Xactimate Report") that represents James' opinion is based on substantial supporting evidence; 4) James reasonably relied on appropriate data that experts in his field normally rely on; 5) James' methodology is not unreliable because his field estimator inspected the Property, which is permissible under Rule 703; 6) James is not parroting the opinions of another; and 7) James' opinions are helpful to the trier of fact. (Doc. 50).

2

In reply, State Farm argues that James' has not formulated any independent opinions as to the cause of damages or scope of repairs and that his experience in preparing estimates does not make admissible his alleged parroting of the opinions of his field estimator. (Doc. 51 at 4).

### A.   **Standard of Review**

"While Federal Rules of Evidence 401 and 402 provide for the liberal admission of relevant evidence, Rules 403, 702, and 703 mitigate against this general policy by giving trial courts discretion to exclude expert testimony that is either unreliable or irrelevant." Johnson v. Louisville Ladder, 2008 WL 5122261, 7 (S.D. Ala. Nov. 14, 2008) (citing Allison v. McGhan Med. Corp., 184 F.3d 1300, 1310 (11th Cir. 1999). Rule 702 governs the admission of expert testimony in federal court, and provides that:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Applying these principles, expert testimony may be admitted if three (3) requirements are met. Louisville Ladder, *supra* (citing Tuscaloosa v. Harcros Chem., Inc., 158 F.3d 548, 562 (11th Cir. 1998)).  First, the expert must be qualified to testify competently regarding the matter he intends to address. Id. at *7.  Second, the methodology by which the expert reaches his conclusion used must be sufficiently reliable as determined by a Daubert inquiry. Id. Third, the testimony must assist the trier of fact through the application of scientific, technical, or specialized expertise to understand the evidence or determine a fact in issue.  Id. Kilpatrick, 613 F.3d at 1335. And "[t]he proponent of the expert testimony bears the burden of showing, by a preponderance of the

3

evidence, that the testimony satisfies each prong." Hendrix ex rel. G.P. v. Evenflo Co., Inc., 609 F.3d 1183, 1194 (11th Cir. 2010).

For reliability, courts look to the following: 1) whether the expert's methodology has been tested or is capable of being tested; 2) whether it has been subjected to peer review and publication; 3) the known or potential rate of error of the theory or technique; and 4) whether the technique has been generally accepted in the proper scientific community. See, e.g., Phillips v. America Honda Motor Co., Inc., 238 Fed. Appx. 540 (11th Cir.2007) (excluding expert testimony where there was no reliable link between the expert's data and the facts in the case). "[W]here [expert] testimony's factual basis, data principles, methods, or their application are called sufficiently into question ... the trial judge must determine whether the testimony has a 'reliable basis' in the knowledge and experience of [the relevant] discipline." Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 119 (1999). This "'gate-keeping' inquiry must be tied to the facts of a particular case." Id. The expert's testimony must be helpful to, or "fit" with, the factual issues to be resolved -- i.e., the district judge must determine whether the expert's reasoning and methodology can be properly applied to the facts. Daubert, 509 U.S. at 591–592. Trial courts must screen expert testimony to ensure that it is both reliable and that it "relate[s] to any issue in the case" (i.e., "fit"). Id. at 590–591. District courts "have substantial discretion in deciding how to test an expert's reliability ...." Rink v. Cheminova, Inc., 400 F.3d 1286, 1292 (11th Cir. 2005) (citing United States v. Majors, 196 F.3d 1206, 1215 (11th Cir.1999) (internal citation omitted).

For relevance and Rule 702, "it is the responsibility of the trial judge to ensure that an expert is sufficiently qualified to provide expert testimony that is relevant to the task at hand and to ensure that the testimony rests on a reliable basis." Beaudette v. Louisville Ladder, Inc., 462 F.3d 22, 25 (1st Cir. 2006) (excluding expert testimony). As for relevance,

> ... the *Daubert* Court imposed a special relevancy requirement.... To be admissible, expert testimony must be relevant not only in the sense that all evidence must be relevant ... but also in the incremental sense that the expert's proposed opinion, if admitted, likely would assist the trier of fact to understand or determine a fact in issue.... In other words, Rule 702, as visualized through the *Daubert* prism, "requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility"....

Ruiz–Troche v. Pepsi Cola of P.R. Bottling Co., 161 F.3d 77, 81 (1st Cir.1998) (citations and quotations omitted). Likewise, a court must always keep in mind the maxim that expert testimony must "assist the jurors in deciding the particular issues in the case." Kumho, 526 U.S. at 156–157. Expert testimony is thus excludable when the factual bases are unsupported and/or the testimony will not assist the jury. See, e.g., Davidov v. Louisville Ladder Group, LLC, 2005 WL 486734, *2 (S.D.N.Y. Mar. 1, 2005) (excluding expert report that was inconsistent with facts of case).

> Rule 703 governs the permissible bases for an expert's opinion testimony and provides:
>
> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.
> Fed. R. Evid. 703.

"Federal Rule of Evidence 703 permits an expert to base an opinion on facts or data not admissible in evidence if it is of a type reasonably relied upon by experts in that particular field. Fed. R. Evid. 703. An expert, however, may not simply repeat or adopt the findings of another expert without attempting to assess the validity of the opinions relied upon. In re TMI Litig*.,* 193 F.3d 613, 715–16 (3d Cir.1999) (finding blind reliance by expert on other expert opinions demonstrates flawed methodology under Daubert ); TK–7 Corp. v. Estate of Barbouti*,* 993 F.2d 722, 732–33 (10th Cir.1993) (excluding expert opinion relying on another expert's report because witness failed to demonstrate a basis for concluding report was reliable and showed no familiarity

with methods and reasons underlying the hearsay report). Particularly when parties do not have the opportunity to examine the information relied upon, courts must ensure that an expert witness is sufficiently familiar with the reasoning or methodology behind the information to permit cross-examination. TK–7 Corp., 993 F.2d at 732." In re Polypropylene Carpet Antitrust Litig., 93 F. Supp. 2d 1348, 1357 (N.D. Ga. 2000).

### B. Analyses

As there is no apparent dispute as to James' qualifications, the Court addresses his methodologies (reliability) and helpfulness to the fact finder (relevance). In sum, State Farm substantively argues that James does not have the appropriate foundation of facts or data upon which an expert would reasonably rely since he reviewed photograph's and notes taken by his field inspector during their inspection of the Property to help form the basis of his opinion and that James' is therefore parroting the opinion of another.

First, the Court will consider how the Xactimate Report was prepared and whether the basis of James' opinion is reliable. Initially Tracy Bush, a field estimator for Triad Restoration Services ("Triad"), went to the Property and performed a field inspection. At the field inspection, Bush conducted a walk-through, discussed the damages the Property incurred during the storm with the McKinneys, took measurements, made notes on necessary repairs, photographed her observations, and gathered data to be put into a software program. (Doc. 50-1 at 37-39).[2] Next, a "data entry admin person" for Triad entered the data Bush gathered into an estimating program. (Doc. 50-1 at 57). Then, James reviewed "all of the photographs, all of the reports, the measurements, sp[oke] with [Bush], and finalize[d] the estimate." (Doc. 50-1 at 92). Thus, James relied on the data

---

[2] Bush works under James' supervision and licensure. (Doc. 50-1 at 92).

compiled and organized by his subordinates to form the basis of his opinion and produce the Xactimate Report.[3]

The Court finds that James is not acting as a conduit to introduce hearsay or merely parroting Bush's opinion and that the process James used in forming his opinion and generating the Xactimate Report was proper. See, e.g., Woienski v. United Airlines, Inc., 383 F. Supp. 3d 1342, 1348 (M.D. Fla. 2019) ("an expert is permitted to form conclusions by extrapolating from existing data.") (citing Gen. Elec. Co. v. Joiner, 522 U.S. 136, 146, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997); Allison v. McGhan Med. Corp., 184 F.3d 1300, 1312 (11th Cir. 1999) ("factors which this and other courts have considered in the *Daubert* analysis are reliance on anecdotal evidence (as in case reports)…"); Bryant v. BGHA, Inc., 9 F. Supp. 3d 1374, 1392 (M.D. Ga. 2014) (permitting opinion of expert who did not personally visit the scene of the incident and did not inspect the hunting tree stand because he relied upon partner's measurements, photos and data); Am. Key Corp. v. Cole Nat. Corp., 762 F.2d 1569, 1580 (11th Cir. 1985) ("An expert witness's opinion testimony does not have to be based upon admissible evidence."); (Companhia Energetica Potiguar v. Caterpillar Inc., 2017 WL 10775768, at *6 (S.D. Fla. June 12, 2017), report and recommendation adopted, 2017 WL 10775767 (S.D. Fla. Dec. 14, 2017)) ("The fact that an expert did not personally inspect the scene of an incident … is not by itself determinative; personal inspections are not necessarily required."). Accordingly, James is deemed reliable to testify about

---

[3] James submitted an affidavit confirming that "[i]n the residential construction and restoration industry, it is reasonable to rely on [1]. information obtained during an inspection of a property by an estimator or assistant in forming opinions as to the scope and cause of storm damage and the cost to repair that damage … [ 2.] statements made by property owners regarding the timing and cause of damage to their property in forming opinions as to the scope and cause of storm damage and the cost to repair that damage…[and 3.] information obtained from estimates prepared by, and photographs taken by, other persons in forming opinions as to the scope and cause of storm damage and the cost to repair that damage." (Doc. 50-5 at 2-3).

the contents of the Xactimate Report and his opinion as to the cause of damage sustained to the Property, with one exception. James stated in his deposition, and State Farm points out, that he does not have a specific causation opinion about the cracks in the ceiling. (Doc. 50-1 at 59, lines 9-12). Instead, James relied on the Plaintiffs telling Bush that the cracks in the ceiling were not present prior to the Hurricane. Without more explanation, this fact alone is insufficient to support an expert opinion as to causation of the cracks.

Next, the Court will consider the relevance of James' testimony and the Xactimate Report. James' testimony is directly related to the damage the Property sustained during Hurricane Sally. More specifically, James would testify "as to the scope of storm damage and the cost to repair that damage." (Doc. 50 at 8). State Farm refutes the scope of damages the Property incurred as a result of Hurricane Sally. Clearly, James' testimony concerning the scope of damage to the Property is relevant and would assist a jury in reaching their conclusion. See, e.g., Kumho, 526 U.S. 137, 156, 119 S. Ct. 1167, 1178, 143 L. Ed. 2d 238 (1999) (a court must always keep in mind the maxim that expert testimony must "assist the jurors in deciding the particular issues in the case."); Woienski v. United Airlines, Inc., 383 F. Supp. 3d 1342, 1348 (M.D. Fla. 2019) ("cross-examination, contrary evidence, and instruction on the burden of proof are the proper tools for challenging questionable expert evidence.") (citing Rosenfeld v. Oceania Cruises, Inc., 654 F.3d 1190, 1193 (11th Cir. 2011)). Accordingly, the Court finds that James' testimony will be helpful to the jury.

As such, State Farm's motion to exclude James as an expert witness (Doc. 41) is **DENIED**, except as to James' opinion as to causation of the ceiling cracks.

### III. Standard of Review on Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Rule 56(c) provides as follows:

> *(c) Procedures*
> *(1) Supporting Factual Positions.* A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> **(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> **(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>
> *(2) Objection That a Fact Is Not Supported by Admissible Evidence.* A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.
>
> *(3) Materials Not Cited.* The court need consider only the cited materials, but it may consider other materials in the record.
>
> *(4) Affidavits or Declarations.* An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

FED. R. CIV. P. Rule 56(c).

The party seeking summary judgment bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). If the nonmoving party fails to make "a sufficient showing on an essential element of her case with respect to which she has the burden of proof," the moving

9

party is entitled to summary judgment. Celotex, 477 U.S. at 323. "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998-999 (11th Cir. 1992).

### IV.   Applicable Law

The parties did not cite to the Policy and it does not appear that a copy of the Policy was provided to the Court. However, the Policy appears to have been issued and delivered to the McKinneys in Alabama. The incident giving rise to the insurance claim occurred in Alabama. Accordingly, Alabama law applies to the interpretation of the policy. See Stovall v. Universal Construction Co., 893 So.2d 1090 (Ala. 2004) ("In a contractual dispute, Alabama law would have us first look to the contract to determine whether the parties have specified a particular sovereign's law to govern. Cherry, Bekaert & Holland v. Brown, 582 So.2d 502, 506 (Ala. 1991). Lacking such a contractual specification, we follow the principle of *lex loci contractus,* applying the law of the state where the contract was formed. Brown, 582 So.2d at 506. That state's law then governs unless it is contrary to the forum state's fundamental public policy. Id. at 506–07.").

Since "general rules of contract law and interpretation govern the interpretation of an insurance policy, Twin City Fire Ins. Co. v. Alfa Mut. Ins. Co., 817 So.2d 687, 691 (Ala. 2001), the [C]ourt must assign the insurance policy its clear and plain meaning and interpret it to give effect to all terms and provisions. See Brewbaker Motors, Inc. v. Belser, 776 So.2d 110, 112 (Ala. 2000); Bd. of Water & Sewer Comm'rs of Mobile v. Bill Harbert Constr. Co., 870 So.2d 699, 710 (Ala. 2003). If an insurance policy is ambiguous, or its meaning is in doubt or uncertain, it is construed against the insurer. Scottsdale Ins. Co. v. National Security Fire and

Casualty Ins. Co., 741 So.2d 424, 426, 427 (Ala. Civ. App. 1999)." Cont'l Cas. Co. v. Alabama Emergency Room Admin. Servs., P.C., 623 F. Supp. 2d 1290, 1294 (M.D. Ala.), aff'd, 355 F. App'x 332 (11th Cir. 2009).

V.     **Analyses**

    A. **Breach of Contract**

The McKinneys assert a breach of contract claim in Count 1 of the Complaint. State Farm argues this claim is due to be dismissed because the McKinneys' expert witness's testimony should be excluded and therefore the McKinneys do not have any "admissible evidence of the cause or amount of damages incurred because of any alleged breach of the policy." (Doc. 40 at 3).

Under Alabama Law, a plaintiff must prove four elements to recover on a breach of contract claim: "'(1) the existence of a valid contract binding the parties in the action, (2) [their] own performance under the contract, (3) the defendant's nonperformance, and (4) damages.'" Employees' Benefit Ass'n v. Grissett, 732 So.2d 968, 975 (Ala. 1998) (quoting Southern Med. Health Sys., Inc. v. Vaughn, 669 So.2d 98, 99 (Ala. 1995))." Cong. Life Ins. Co. v. Barstow, 799 So. 2d 931, 937 (Ala. 2001); see also Arrington v. Wells Fargo, 842 F. App'x 307, 312 (11th Cir. 2020).

Here, as discussed *supra*, the McKinneys' expert witness's testimony regarding the scope and amount of damages attributable to Hurricane Sally is admissible. Thus, there are issues of material fact that remain which must be resolved by a fact finder. Accordingly, State Farm's motion for summary judgment on the breach of contract claim fails as a matter of law.

**VI.** <u>**Conclusion**</u>

Accordingly, for the reasons set forth herein, Defendant State Farm's Motion for Summary Judgment (Doc. 39) is **DENIED**.

**DONE** and **ORDERED** this the 19th day of **October 2022.**

<u>/s/ Kristi K. DuBose</u>
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**